IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:22-CV-00145-KDB-DSC

| | |
|---|---|
| **PIEDMONT ROOFING SERVICES, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**NATIONWIDE MUTUAL INSURANCE COMPANY,**<br><br>Defendant. | **ORDER** |

**THIS MATTER** is before the Court on its own motion. Upon review of the Memorandum and Recommendation of the assigned Magistrate Judge on Defendant's Motion to Dismiss (Doc. No. 12) ("M&R"), it appears that this Court lacks subject matter jurisdiction over this action in the absence of Plaintiff Piedmont Roofing Services, LLC's ("Piedmont") claims for unfair trade practices and tortious commercial conduct, which Piedmont lacks standing to assert. Accordingly, the Court will accept, in part, the recommendations of the M&R and remand this action to the North Carolina Catawba County Superior Court unless Defendant Nationwide Mutual Insurance Company ("Nationwide") shows cause why it should not be remanded. The Court will enter this ruling in advance of any objection and briefing related to the M&R because of its independent obligation to enforce the limitations of federal jurisdiction and to avoid the parties incurring the effort and expense of unnecessary briefing.

I.  LEGAL STANDARD

A district court may designate a magistrate judge to "submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain pretrial matters,

1

including motions to dismiss. 28 U.S.C. § 636(b)(1). Any party may object to the magistrate judge's proposed findings and recommendations, and the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Objections to the magistrate's proposed findings and recommendations must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette,* 478 F.3d 616, 622 (4th Cir.), *cert. denied*, 551 U.S. 1157 (2007). However, the Court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). After reviewing the record, the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

Federal courts are courts of limited jurisdiction and may not exercise jurisdiction absent a statutory basis. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "A court is to presume, therefore, that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008) (*citing Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A defendant may remove any action from state court to federal court in which the federal court has jurisdiction. *See* 28 U.S.C. § 1441(a), (b). But, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

The burden of establishing federal subject matter jurisdiction remains with the party seeking removal to the federal forum. *See Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th

2

Case 5:22-cv-00145-KDB-DSC   Document 13   Filed 01/17/23   Page 2 of 9

Cir. 2008). Removal jurisdiction is strictly construed in light of federalism concerns. *See Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Indeed, removal statutes are to be construed strictly, narrowly, and against removal. *See Mulcahey v. Columbia Organic Chemicals Co*., 29 F.3d 148 (4th Cir. 1994), citing, *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941). Therefore, if federal jurisdiction is doubtful, remand to state court is required. *See Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993).

Unless a matter involves an area over which federal courts have exclusive jurisdiction, a district court has subject matter jurisdiction over a case only where the matter involves a federal question arising "under the Constitution, laws or treaties of the United States," 28 U.S.C. § 1331 ("federal question jurisdiction"), or if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1) ("diversity jurisdiction").

Defendant alleges that the Court has subject matter jurisdiction based on federal "diversity jurisdiction," 28 U.S.C. § 1332. Under 28 U.S.C. § 1332, federal district courts have original jurisdiction of all civil actions "between ... citizens of different States" where the amount in controversy exceeds $75,000. Courts generally determine the amount in controversy by reference to the plaintiff's complaint. *See Wiggins v. N. Am. Equitable Life Assurance Co*., 644 F.2d 1014, 1016 (4th Cir. 1981). ("Ordinarily the jurisdictional amount is determined by the amount of the plaintiff's original claim, provided that the claim is made in good faith."). And, in most cases, the sum claimed by the plaintiff controls the "amount in controversy" determination. *St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283 (1938).

3

In declaratory judgment actions, "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1997). More specific to this case, in a declaratory judgment action where a party seeks to recover on an insurance claim, the amount in controversy is the amount of the claim, absent additional damages or exemplary recoveries. *See Darbet, Inc. v. Bituminous Cas. Corp.*, 792 F. Supp. 487, 488–89 (S.D.W. Va. 1992), citing 14A Wright, Miller & Cooper, Federal Practice and Procedure, § 3710, pp. 166–67 (the amount in controversy is the value of the underlying claim, not the face amount of the policy, in cases where the question is the applicability of the insurance policy to a particular occurrence). In sum, "removal of the action is proper on the basis of an amount in controversy asserted [in the notice of removal] ... if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." 28 U.S.C. § 1446(c)(2)(B); See *Riley v. Liberty Mut. Grp., Inc.*, 591 F. Supp. 3d 29, 32–33 (E.D. Va. 2022).

## II. FACTS AND PROCEDURAL HISTORY

Accepting the factual allegations of the Complaint as true, Nationwide insured James and Theresa Hinson's ("Homeowners") residence in Catawba County, North Carolina. On or about June 14, 2021, a wind and hail storm caused substantial damage to the Homeowners' property. They retained Piedmont to complete the necessary repairs to their residence. In doing so, Piedmont and the Homeowners entered into a Proposal and Contract ("the Proposal") in which they separately assigned the rights to any related insurance claim and proceeds to Plaintiff. Doc 1-1, Ex. A. The Complaint alleges that "Insured and Plaintiffs made numerous demands to Nationwide" to pay what they contend is the appropriate amount of the covered loss without success and also made claims under the policy. *Id*. at ¶¶ 9, 27-28. Piedmont's repair estimates

4

Case 5:22-cv-00145-KDB-DSC   Document 13   Filed 01/17/23   Page 4 of 9

which were submitted to Nationwide total $41,539.98 (including a $1000 deductible) and Nationwide has only paid $13,060.99 on the claim,[1] leaving a balance in dispute of $28, 478.99, and resulting in this lawsuit. *See* Doc 1-1, Ex. B-C.

Piedmont originally filed this action in North Carolina's Catawba County Superior Court, and Defendant removed it to this Court, alleging that the Court has subject matter jurisdiction based on federal "diversity jurisdiction," 28 U.S.C. § 1332. Piedmont alleges seven causes of action: (1) violation of N.C. Gen. Stat. § 58-63-15(11); (2) bad faith refusal of an insurance claim; (3) unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1; (4) declaratory judgment as to Homeowners; (5) declaratory judgment as to Defendant; (6) declaratory judgment as to Plaintiff's entitlement to overhead and profit; and (7) declaratory judgment as to ordinance and law.

### III. DISCUSSION

As noted in the M&R, a removed case lacking a proper basis for subject matter jurisdiction must be remanded. *See* Doc. No. 12 at 2, citing, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 96 (1998). The requirements are so absolute that "[n]o party need assert [a lack of subject matter jurisdiction]. No party can waive the defect, or consent to jurisdiction. No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 389 (1998) (internal citations omitted); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1945 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt") (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

---

[1] While the Complaint alleges, "Nationwide has made no payment," Doc. No. 1-1 at ¶15, an exhibit to the Complaint contains a transmittal notice for a check in the amount of $13,060.99 to James & Theresa Hinson. *See* Doc. No. 1-1 at Ex. B, p. 17.

Nationwide moved to dismiss this action on the grounds that Piedmont allegedly lacks standing to pursue its insured's insurance claim or the proceeds of that claim. "Generally, challenges to standing are addressed under Rule 12(b)(1) for lack of subject matter jurisdiction." *Payne v. Chapel Hill N. Props., LLC*, 947 F. Supp. 2d. 567, 572 (M.D.N.C. 2013). The Magistrate Judge agreed with Nationwide, recommending that the Court find that the Homeowner's assignment of rights to Piedmont was invalid under governing North Carolina law. The Court agrees with the recommendation of the M&R, but only in part.

As a general rule, North Carolina allows causes of action to be assigned to third parties. *See In re Welch*, 494 B.R. 654, 660–61 (Bankr. E.D.N.C. 2013), citing *Morton v. Thornton*, 259 N.C. 697, 699, 131 S.E.2d 378, 380 (1963) (recognizing that an assignee "is a real party in interest and may maintain the action"). However, "assignments of personal tort claims are void as against public policy because they promote champerty...." *Horton v. New S. Ins. Co.*, 122 N.C.App. 265, 268, 468 S.E.2d 856, 858 (1996). Personal tort claims, assignment of which is prohibited by the public policy of North Carolina, include unfair and deceptive trade practices, bad faith refusal to settle an insurance claim, fraud and other causes of action. *See, e.g.*, *Skyline Restoration, Inc. v. Church Mut. Ins. Co*., 20 F.4th 825 (4th Cir. 2021) (holding that a claim for unfair business practices could not be pursued "because these types of claims are not assignable under North Carolina law"); *Investors Title Insurance Co. v. Herzig,* 330 N.C. 681, 688 (1992) (holding that claims for conspiracy to commit fraud and unfair and deceptive trade practices violations, both of which are causes of action that are personal in nature, cannot be assigned); *S. Ry. Co. v. O'Boyle Tank Lines*, 70 N.C.App. 1, 8, 318 S.E.2d 872, 877 (1984) (stating that the purported assignment of individual plaintiffs' personal injury claims to their employer, a co-plaintiff, "was contrary to public policy and ineffective...."). Accordingly, the Court agrees with

the M&R's recommendation that Piedmont does not have standing to pursue any of the Homeowner's personal tort claims, including claims for unfair trade practices and bad faith refusal of an insurance claim.

The lack of standing to assert these personal tort claims has significant implications for the continuation of this action in federal court. In its Notice of Removal, Nationwide specifically relied on Piedmont's claim for unfair and deceptive trade practices to support its contention that the amount in controversy exceeds $75,000. *See* Doc. No. 1 at 4. In particular, Nationwide argued that the "trebling of Plaintiff's alleged compensatory damages [on its claim under N.C. Gen. Stat. §§ 75-1.1] would exceed $75,000.00." *Id*. Indeed, as suggested by Nationwide's Notice of Removal, it seems clear from the Complaint that – even if the Court ignores the apparent partial payment of the Homeowner's insurance claim – the amount of the claim is well below $75,000. Therefore, in the absence of a showing that the amount in controversy can support diversity jurisdiction under 28 U.S.C. §1332 this action must be remanded to the North Carolina state courts for further proceedings.

Finally, having determined that this case must be remanded, the Court need not and does not decide whether to accept the M&R's broader recommendation that the entirety of the Homeowner's assignment of insurance claims and proceeds to Piedmont was invalid. While *personal* tort claims may not be assigned, claims for insured property losses that are assigned *after* a loss has already occurred are generally permitted, regardless of whether the insurance policy prohibits assignments without the insurer's consent. *See First-Citizens Bank & Tr. Co. v. Universal Underwriters Ins. Co*., 113 N.C. App. 792, 796-97 (1994). As quoted in the M&R,

> [T]he great weight of authority supports the rule that general stipulations in policies prohibiting assignments thereof except with the consent of the insurer apply to assignments before loss only, and do not prevent an assignment after loss, for the obvious reason that the clause by its own terms ordinarily prohibits merely the assignment of the policy, as distinguished from a claim arising thereunder, and the

> assignment before loss involves a transfer of a contractual relationship while the assignment after loss is the transfer of a right to a money claim.

*Id*. at 797. In *First-Citizens*, the North Carolina Court of Appeals reversed a trial court's entry of summary judgment for an insurer, permitting a bank to assert a car dealership's claims for insurance proceeds following the theft of a vehicle repossessed by the bank from the dealership's lot. Significantly, the *First-Citizens* court upheld the assignment even though the bank, not the insured, "made a demand for payment under the terms of the insurance policy." *Id*. at 794.[2]

Further, concerns of "champerty" raised by Universal and in the M&R do not seem to apply here. *See Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, 298 F.3d 291, 299 (4th Cir. 2002) (holding that champerty prohibits "schemes to promote litigation for the benefit of the promoter rather than for the benefit of the litigant or the public" rather than typical assignments of choses in action which further existing or underlying commercial transactions). Piedmont's customer's assignment of their insurance claims did not result in the "stirring up, meddling in, or maintaining litigation in which the person has no interest, for personal gain." *Id*. at 299. Rather, the assignments appear to have been agreed to in exchange for an existing, commercial value – the repair of the Homeowner's roof – a transaction in which both the roofer and insured homeowner had a real interest.

In sum, the Court will decline to adopt the M&R's findings and conclusions with respect to the validity of the assignment of the Homeowner's contractual insurance claims and proceeds to Piedmont, leaving that issue of North Carolina law to be decided on remand.

---

[2] Nationwide and the M&R rely on *Charlotte-Mecklenburg Hosp. Auth. v. First of Georgia Ins. Co.*, 455 S.E.2d 655, 657 (N.C. 1995). However, the assignment at issue in that case related only to claims for personal injury. Also, the hospital plaintiff in that action was allowed to assert its lien for medical charges on any insurance proceeds paid to the insured. Similarly, here the roofing company is seeking to recover insurance proceeds to pay for roofing repairs it provided to the insured.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. The M&R (Doc. No. 12) is affirmed and adopted to the extent stated above;

2. Defendant is directed to show cause, no later than 14 days from the date of this Order, why this action should not be **REMANDED** to the Superior Court for Catawba County, North Carolina; and

3. In the absence of a timely filing by Defendant in support of this Court's continuing jurisdiction over this action as set forth above, the Clerk is directed to remand this action to the Superior Court for Catawba County, North Carolina.

**SO ORDERED ADJUDGED AND DECREED**.

*/s/ Kenneth D. Bell*
Kenneth D. Bell
United States District Judge

9

Case 5:22-cv-00145-KDB-DSC   Document 13   Filed 01/17/23   Page 9 of 9